FILED
CLERK, U.S. DISTRICT COURT

FEB - 2 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN D. BOYD,<br><br>　　　Petitioner,<br><br>　　v.<br><br>FERNANDO GONZALEZ, Warden,<br><br>　　　Respondent. | NO. ED CV 09-1227-DSF(E)<br><br>ORDER ADOPTING FINDINGS,<br>CONCLUSIONS AND RECOMMENDATIONS<br>OF UNITED STATES MAGISTRATE JUDGE |

　　Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

　　IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///
///
///
///

|     |                                                                                           |
| --: | :---------------------------------------------------------------------------------------- |
|  1  | IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein by United States mail on Petitioner, and counsel for Respondent. |

     IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein by United States mail on Petitioner, and counsel for Respondent.

     LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: 1/27/10

_____
DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN D. BOYD, | ) NO. ED CV 09-1227-DSF(E) |
| Petitioner, | ) |
| v. | ) REPORT AND RECOMMENDATION OF |
| FERNANDO GONZALEZ, Warden, | ) UNITED STATES MAGISTRATE JUDGE |
| Respondent. | ) |

This Report and Recommendation is submitted to the Honorable Dale S. Fischer, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

Petitioner filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" on June 30, 2009. Respondent filed an Answer on August 19, 2009. Petitioner filed a Reply on October 14, 2009.

///

## BACKGROUND

A jury found Petitioner guilty of: (1) second-degree murder of James Hartzell, in violation of California Penal Code section 189; and (2) three counts of assault with a firearm, in violation of California Penal Code section 245(a)(2) (Reporter's Transcript ["R.T."] 646-49). The jury also found true firearm enhancements as to the first count, in violation of California Penal Code sections 12022.53(b), (c) and (d) (R.T. 647-49). Petitioner received a sentence that included an indeterminate term of 55 years to life and a determinate term of nine years (R.T. 673-75).

In a reasoned opinion, the Court of Appeal affirmed the judgment but awarded Petitioner 965 days of credit for actual time served in custody from the date of arrest to the date of sentencing (Respondent's Lodgment 7; see People v. Boyd, 2008 WL 287822 (Cal. App. Feb. 4, 2008)). The California Supreme Court denied Petitioner's petition for review without opinion (Respondent's Lodgment 9).

## FACTUAL SUMMARY

The following factual summary is taken from the opinion of the California Court of Appeal in People v. Boyd, 2008 WL 287822 (Cal. App. Feb. 4, 2008). See Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (taking factual summary from state appellate decision); Galvan v. Alaska Dep't of Corrections, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005) (same); see also 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be

1  correct").

3  After leaving a bar at 2:00 one morning, Eileen Meister
4  and her longtime boyfriend James Hartzell (Hartzell or
5  victim) went to George Kerner's apartment so that Hartzell
6  could fix Kerner's video-game system.  Defendant,
7  accompanied by his friend Chris Gouweloos, went to Kerner's
8  residence to buy drugs and get high.

10  When Hartzell and Kerner began playing a video game,
11  Meister went to sleep in an adjoining bedroom.  Hartzell
12  next played dice with defendant in the dining room.  Around
13  8:00 or 9:00 in the morning, Kerner asked everyone to leave
14  as a friend had stopped by for breakfast to introduce him to
15  a female friend.  Hartzell woke Meister and the two began to
16  leave the apartment.

18  As defendant exited the apartment, he offered to sell
19  Kerner a videogame system for $50.  Kerner asked defendant
20  to get it and plug it in—if it worked, Kerner would pay him
21  the money.  Defendant replied, "Uh-uh, I'm coming up now,"
22  whereupon he pulled a gun from his waistband and fired a
23  shot at Kerner.  Kerner dove to safety onto the ground.

25  Defendant waved the gun around the room, pointing it at
26  everyone present.  When defendant aimed the gun at Meister,
27  Hartzell stepped in front of Meister and told him "Don't
28  point the gun at my lady."  Hartzell and Meister stood at a

distance of approximately eight to ten feet away from defendant. Defendant responded, "I'm going to put a cap in your ass, mother fucker," then raised his arm and shot Hartzell. The bullet traveled through Hartzell's left arm and exited his torso. Hartzell said, "Oh God, the fucker shot me," grabbed his side, and then fell to the ground. Defendant fled from the apartment, grabbing two purses lying on a coffee table on his way out the door.

Hartzell later died from a loss of blood caused by abdominal hemorrhaging.

(Respondent's Lodgment 7, pp. 2-3; People v. Boyd, 2008 WL 287822, at *1).

**PETITIONER'S CONTENTIONS**

Petitioner contends:

1. The trial court allegedly committed Doyle[1] error by assertedly permitting the prosecution to use Petitioner's post-Miranda[2] silence to attack Petitioner's credibility (Ground One);

---

[1] Doyle v. Ohio, 426 U.S. 610 (1976) ("Doyle").

[2] Miranda v. Arizona, 384 U.S. 436 (1966) ("Miranda").

2.  Petitioner's trial counsel allegedly committed Lowery[3] error by making a jury argument that was assertedly contrary to Petitioner's testimony (Ground Two); and

3.  The errors alleged above assertedly constituted cumulative error (Ground Three).

## STANDARD OF REVIEW

Under the "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"), a federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (as amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63

---

[3] Lowery v. Cardwell, 575 F.2d 727 (9th Cir. 1978) ("Lowery").

(2003). A state court's decision is "contrary to" clearly established Federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts. . . materially indistinguishable" from a decision of the Supreme Court but reaches a different result. See Early v. Packer, 537 U.S. at 8 (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).

A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. at 407 (citation omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted). "The state

court's application must have been 'objectively unreasonable.'" Id. at 520-21 (citation omitted); see also Davis v. Woodford, 384 F.3d 628, 637-38 (9th Cir. 2004), cert. dism'd, 545 U.S. 1165 (2005). In applying these standards, this Court looks to the last reasoned state court decision. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).

Additionally, federal habeas corpus relief may be granted "only on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In conducting habeas review, a court may determine the issue whether the petition satisfies section 2254(a) prior to, or in lieu of, applying the standard of review set forth in section 2254(d). Frantz v. Hazey, 533 F.3d 724, 736-37 (9th Cir. 2008).

## DISCUSSION

### I. Any Alleged Doyle Error Was Harmless.

Petitioner testified that the gun discharged after Hartzell assaulted Petitioner, grabbed Petitioner's gun hand, and struggled with Petitioner (R.T. 400-02, 417, 419). On cross-examination, the prosecutor asked Petitioner the following questions and received the following answers:

Q  Did you ever call the police?
A  No.
Q  Did you ever tell the police that you were the victim

```
 1              of any kind of assault by [Hartzell]?
 2         A    No . . .
 3         Q    [H]ave you ever told anyone previously that . . . you
 4              were the victim of an assault by Mr. Hartzell?
 5         A    I never talked to anybody about this.
```

(R.T. 424-25, 428). On redirect, Petitioner testified that he previously had told his wife, his attorney, and the defense investigator of Hartzell's alleged assault of Petitioner (R.T. 444-48). In closing argument, the prosecutor noted that Petitioner fled after the shooting and did not call 911 (R.T. 632). The prosecutor also noted that Petitioner initially testified he had never told anyone of the version of events to which he testified at trial (R.T. 632).

Although the prosecution properly may inquire into or comment on a defendant's failure to make a statement prior to the receipt of Miranda warnings, inquiry into or comment on a defendant's failure to make a statement subsequent to the receipt of Miranda warnings can constitute Doyle error. See Doyle at 611, 618-19. Petitioner argues that, because the prosecutor's inquiry and comment were not limited to the pre-Miranda time frame, Doyle error occurred.

A Doyle error is a "trial type" error, such that habeas relief may not issue unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abramhamson, 507 U.S. 619, 622, 629 (1993). As discussed below, any alleged Doyle error did not have a substantial and injurious effect or

1  influence in determining the jury's verdict in Petitioner's case.

3  Evidence of Petitioner's post-Miranda silence added little to the evidence properly before the jury regarding Petitioner's consciousness of guilt. Petitioner fled from the scene of the shooting. He did not call 911. He did not call the authorities to volunteer his version of events at any time between the shooting and the receipt of Miranda warnings. Moreover, the incriminating evidence against Petitioner introduced at trial was compelling. Two witnesses testified they saw Petitioner shoot Hartzell from several feet away (R.T. 118, 281). These witnesses also testified that Petitioner was the aggressor who fired a first shot at Kerner and then waved the gun toward everyone else in the room (R.T. 113-15, 238-40). No witness other than Petitioner testified that Hartzell assaulted Petitioner (R.T. 118, 240-42, 276-77). Forensic evidence demonstrated that Hartzell was shot from some distance away, rather than in a close-range hand-to-hand struggle (R.T. 309-19). The jury returned its verdict after less than a day of deliberations (R.T. 642-46). Under these circumstances, any alleged Doyle error was harmless. See Brecht v. Abrahamson, 507 U.S. at 639 (Doyle error harmless where the prosecution's references to post-Miranda silence were infrequent, evidence of guilt was "weighty" and the references to post-Miranda silence were "in effect, cumulative" of proper references to pre-Miranda silence); Larimer v. Yates, 2008 WL 5188945, at *9-10 (C.D. Cal. Dec. 10, 2008) (Doyle error harmless in light of the strength of the evidence and the fact of the petitioner's flight after the shooting).

///
///

1  II. **No Lowery Error Occurred.**

3  In Lowery, the Ninth Circuit held that a defendant is denied due process when the defendant's counsel communicates to the trier of fact a belief that the defendant committed perjury. Lowery, 575 F.2d at 730. Petitioner contends that his counsel committed Lowery error during closing argument. Contrary to Petitioner's contention, however, counsel's argument did not communicate to the jury any belief that Petitioner committed perjury.

Petitioner testified, in pertinent part:

Q   So Jim [Hartzell] grabs your arm?
A   Grabs my hand with the gun. I know he grabbed.
Q   Did he grab the gun?
A   He grabbed me. That's all I know is he grabbed me.
Q   And how did the gun go off?
A   I have no idea . . .
Q   Do you remember pulling the trigger back?
A   I don't remember pulling the trigger. I know Jim grabbed the gun, and only thing in my mind is he's going to take the gun. He's pulling. I'm pulling. I'm trying to get out the door. The door is right here. I'm trying to leave.
Q   So if we might, I have your arm here.
A   I think probably his hand was down some.
Q   Grab your arm, is that okay?
A   Yeah.

```
 1    Q    So I'm grabbing your hand at below the wrist towards
 2         the knuckles, between the knuckles in [sic] the wrist?
 3    A    Somewhere in that area. I can't pinpoint exactly where
 4         it would be.
 5    Q    And then the gun goes off; is that fair?
 6    A    Somewhere between there the gun definitely went off.
 7    Q    So the gun has gone off like this. I'm holding your
 8         right hand with my right hand. So the gun goes off,
 9         and where was Jim's left-hand?
10    A    I have no idea.
11    Q    When the gun goes off what does Jim do?
12    A    I don't even know when the gun went off, is what
13         I'm trying to explain to you. Jim was like this-
14         Jim grabs my hand, and I'm pulling this way and
15         Jim is pulling that way. Only thing I can
16         remember is this.
17    Q    And you run out the door.
18    A    Exactly
19
20  (R.T. 418-19).
21
22  Petitioner's attorney argued to the jury, in pertinent part:
23
24       I'm going to say something that may shock you, but I'm
25  going to say it anyways. I wasn't there. She wasn't there.
26  None of us were there. But there is a possibility, and this
27  is not necessarily the smartest thing, smartest thing that a
28  defense attorney can say, but I think it's there and I have
```

>       to say it: There are two possibilities from my vantage
>       point.  One is there was a struggle over the gun and it went
>       off.  The other is there's a struggle over the gun and amid
>       the adrenalin and the fear and the drugs and everything
>       else, that pulling back, defendant fired.  You have to say
>       that that's a possibility.
>
>       And I'm not going to walk away from that and say that
>       that couldn't have happened.  And I know that's not the
>       greatest defense attorney move, especially considering
>       that's not what he said.  Again, it goes back to memory.  It
>       goes back to consciousness.  It goes back to in the heat of
>       the moment of what happened.  I don't know.  *I'm not an
>       expert but it certainly lines up with everything else that
>       the doctor said.  And it lines up even with what he
>       [Petitioner] said.*  It's just something that you consider,
>       which would lead you to involuntary manslaughter.

(R.T. 617-18) (emphasis added).

Counsel's closing argument neither stated nor implied that Petitioner's testimony was perjurious.  Petitioner testified that he could not remember pulling the trigger of the gun, and did not know how or when the gun discharged.  Counsel's argument suggested two possible explanations for the gun's discharge, either of which (if believed) would have spared Petitioner a murder conviction.  One of these possible explanations (accident during struggle) was entirely consistent with Petitioner's testimony.  Counsel also offered the

"possibility" of an alternative explanation (heat of passion while pulling back during a struggle) that was arguably inconsistent with part of Petitioner's testimony. However, counsel's offering of this possible alternative explanation did not communicate to the jury a belief that Petitioner had committed perjury. Counsel merely communicated to the jury the available option of acquitting Petitioner of murder even if the jury chose to believe that the shooting was not accidental. No Lowery error occurred. See United States v. Campbell, 616 F.2d 1151, 1152-53 (9th Cir.), cert. denied, 447 U.S. 910 (1980) (Lowery error exists only when the actions of the attorney preclude the trier of fact from independently judging the merits of the case); Lowery, 575 F.2d at 731 (due process violation found only where counsel demonstrated in a "clear and unequivocal manner" counsel's disbelief in the defendant's testimony); see also People v. Barnett, 17 Cal. 4th 1044, 1165-66, 74 Cal. Rptr. 2d 121, 954 P.2d 384, cert. denied, 525 U.S. 1044 (1998) (defense counsel properly suggested to the jury a possible alternative scenario whereunder the defendant stabbed the victim to death in a fit of anger, a scenario flatly inconsistent with the defendant's testimony that the defendant never stabbed the victim).

III. **Petitioner's Claim of Cumulative Error Lacks Merit.**

Because any Doyle error was harmless and no Lowery error occurred, Petitioner's claim of cumulative error must fail. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519b U.S. 1142 (1997); see also Turner v. Calderon, 281 F.3d 851, 890 (9th Cir. 2002) ("Cumulatively, Turner's claims of alleged trial error create no

1  more prejudice than they do independently.").

## RECOMMENDATION

For all of the foregoing reasons,[4] IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying and dismissing the Petition with prejudice.

DATED: November 6, 2009.

    /s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[4] Because Petitioner's claims fail under 28 U.S.C. section 2254(a), this Court need not, and does not, determine whether the standard of review set forth in 28 U.S.C. section 2254(d) also forecloses habeas relief on these claims. See Frantz v. Hazey, 533 F.3d at 736-37.

14

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.